## SNOVER *v.* BOYNTON.

1. APPEAL AND ERROR—DEMURRER—MULTIFARIOUSNESS—SPECIAL DEMURRER—EQUITY.

   The objection that a bill is multifarious is not a ground of general demurrer and an order overruling it is not appealable.

2. CORPORATIONS—OFFICERS AND DIRECTORS—ACCOUNTING—BENEFICIAL ASSOCIATIONS—RECEIVER—EQUITY.

   The receiver of a mutual fraternal organization engaged in loaning and investing funds is entitled to maintain a suit in equity for accounting as against officers and directors of the association who were charged by the pleading with having neglected their duties, permitting the secretary of the organization to handle funds in an improper and unauthorized manner, as set forth in the bill, and failing to audit his accounts in a reasonably careful manner, so that he was enabled to convert funds of the association to his own use and to make loans to his wife and otherwise divert the property of the association.

3. Same—Parties—Joinder.

The several officers and directors of the association who were jointly and severally charged by averments of the bill with neglect, were properly made joint defendants; a demurrer was properly orerruled although no conspiracy was averred.

Appeal from St. Clair; Beach, J. Submitted November 20, 1912. (Docket No. 77.) Decided January 3, 1913.

Bill by Horace G. Snover as receiver of the United Home Protectors' Fraternity against Charles L. Boynton and others for an accounting and general relief. From an order overruling demurrers of the defendants to complainant's bill defendants appeal. Affirmed.

*Lincoln Avery* and *Thomas Wellman*, for complainant.

*H. L. Stevens* (*William Mitchell*, of counsel), for defendant Wilson.

*Phillips & Jenks*, for other defendants.

Ostrander, J. In a bill of complaint filed, probably, in April, 1911, in the circuit court for the county of St. Clair, in chancery, the court is advised that complainant is receiver of the United Home Protectors' Fraternity, including the supreme lodge thereof, the purposes and powers of which fraternity were:

" To unite fraternally all reputable persons of legal age thereby promoting the social relations of its members. To diffuse the principles of economy, industry, benevolence and charity, and to more particularly encourage and foster the incentive to home building. To transact a building and loan business through the lodge system, embracing tontine and maturing benefits, with a liability limited to the payment of the matured certificates of the persistent members. To issue membership certificates in series or otherwise, to be paid out of the investment funds of the order, upon the maturity of such certificates, or as hereinafter provided. To loan money to its members and

enforce the collections of all debts and obligations due to the order. To purchase at sheriff's sale or other judicial sale, or at any other sale, public or private, any real estate upon which the order may have a claim, and the real estate so purchased to sell, convey, rent, lease or mortgage to any person or persons whomsoever."

The supreme lodge of the fraternity was organized in January, 1894, when it filed articles of incorporation under the provisions of Act No. 68 of the Public Acts of 1893, pursuant to which it designated the Commercial Bank of Port Huron as depositary of its funds and securities, and no other depositary was designated prior to March 28, 1908. The fraternity is insolvent and not able to pay its creditors. (When it became insolvent, or when complainant was appointed its receiver, does not appear.) Certain persons who are made parties defendant were, on March 20, 1908, and for some years prior to that date, officers of the supreme lodge of said fraternity, and had assumed to perform the duties of the respective offices.

" *Sixth.* It was the duty of the said corporation through its officers, the supreme executive board and the supreme board of trustees, to cause to be deposited all of the funds and securities of said fraternity in the said officially designated depositary, viz., the Commercial Bank of Port Huron. When said funds were so deposited in said officially designated depositary, it became the duty of the proper officers to divide, and to cause to be divided, said funds into three separate funds or accounts as follows: A maturing benefit fund, a general fund, and an investment fund. And it then became and was the duty of the said supreme executive board and the individuals thereof, jointly and severally as trustees, directors, and officers and the depositary, viz., the Commercial Bank, to guard and protect the said funds, moneys, and securities of and belonging to the said corporation and to see that the same were not dissipated, lost or used for any other purpose or purposes than those purposes designated in Act No. 68 of the Public Acts of 1893, and the articles of incorporation and organization of said corporation and its laws hereto annexed, and made a part hereof.

" *Seventh.* This complainant alleges that it became the duty of the said supreme executive board and each mem-

ber thereof and the said depositary, viz., the Commercial Bank, to create no other funds or accounts or permit any person or persons to create any other or different funds or accounts than the said maturing benefit fund account, the general fund account, and the investment fund account, and that it became and was their joint and several duties as a supreme executive board and individual members thereof and the board of supreme trustees, and the individual members of said board, and the officers of said corporation, to not allow or permit any money, funds, or securities to be withdrawn from any of said accounts in said depositary for the purpose of creating another or a different account known as a secretary's account, which this complainant alleges the said supreme executive board, the several officers of said corporation, and the supreme board of trustees did do and permit, viz., did permit and allow the creation of an account known as United Home Protectors' Fraternity account and referred to as the secretary's account or fund, and complainant alleges that the moneys and funds of said fraternity were withdrawn from the investment fund account, so kept with the said depositary, and transferred to an account known as the secretary's account, and complainant alleges that each and all of the said persons, officers, trustees, and boards and said depositary were guilty of great negligence and a want of due and ordinary diligence in allowing and permitting the creation of said secretary's account and the withdrawal from the investment fund account of funds and moneys as herein alleged and over which account said several persons and boards exercised no control whatever, which resulted in the loss of many thousands of dollars to said fraternity and its membership, all of which would have been prevented and the said funds and moneys saved to the said fraternity and its membership had due diligence, care, and attention been exercised by the said several persons or any of them in the performance of their duties as officers, trustees in the management of the business of said fraternity.

" *Eighth.* Complainant alleges that the said trust depositary and its officers and agents were not legally authorized to transfer any of the funds or moneys of the said corporation from the investment fund account, to the said unauthorized account, viz., the secretary's account, which the said trust depositary through its officers and agents did do, and complainant alleges that the said trust depos-

itary, viz., the Commercial Bank, was guilty of great negligence in the performance of its duties as such depositary and trustee in transferring funds from the regular and legally authorized account to said secretary's account.

" *Ninth.* The investment funds were loaned to members of said fraternity, who made application therefor, as provided by and in the by-laws of said order. The said funds were required to be deposited in the investment fund account so kept by the said trust depositary. Complainant alleges that for many years prior to the 28th day of March, 1908, the said officers, the supreme executive board and the supreme board of trustees, and the said depositary bank, its officers and employés, jointly and severally as boards and as individuals had permitted and allowed the supreme secretary of said order to withdraw funds from said investment fund account, contrary to and in violation of the act under which said fraternity was organized and in violation of its articles of organization and the laws of said fraternity, and to deposit them to his credit as secretary of said fraternity, and the said several boards and the members thereof and the said officers, trustees, and the said depositary, and its officers and employés, in so permitting the transfer and withdrawal of said funds, were each and all guilty of great negligence, which resulted in the loss of the funds of the said fraternity in a large amount aggregating $125,000 and upwards. The complainant alleges in this connection, as a part of this paragraph, that said William L. Wilson, supreme secretary, and other persons checked upon and drew from said secretary's account, so created in said depositary, large sums of money, a large amount of which this complainant alleges has not been accounted for and have not come to his possession as receiver of said corporation, and which were not used by said Wilson or any other person to pay and discharge obligations of the fraternity to its membership and which said funds are of right the property of this corporation and should be accounted for and returned to complainant as receiver therefor and for the benefit of said society and its membership.

"*Tenth.* Complainant alleges that through the negligence, inattention, and mismanagement of the affairs of the said corporation, by its officers, supreme executive board, and supreme board of trustees, in not supervising, directing, and managing, collecting, and safeguarding the investment of its funds in accordance with the laws of

said fraternity and through failure to perform their several duties as officers and trustees, the said funds and assets of said association or fraternity became dissipated and lost, fraudulently wasted, converted, and squandered. Complainant alleges that through the neglect of the duties assumed and required to be performed by said board's officers and trustees, the said secretary, William L. Wilson, was permitted and allowed general and unrestricted access to the funds of said order resulting in the said Wilson fraudulently appropriating to his own use the proceeds of the assets and securities and funds of the said fraternity in an amount upwards of $125,000, all of which would have been saved to the said fraternity and its members, had the said several officers and trustees and the said trust depositary bank performed their said several duties required of them and each of them, by the terms of Act 68 of the Public Acts of 1893 and the laws of the said corporation which are made a part of this bill.

" *Eleventh.* The said supreme officers, and the said supreme executive board as a board and as individuals, and the supreme board of trustees as a board and as individual trustees, carelessly and negligently and unmindful of their duties, permitted and allowed the supreme secretary, W. L. Wilson, to assume to perform their said several duties as officers and as trustees and directors, and, among other things, to receive the dues, assessments, fines, and other moneys due and payable from the members of said order and take charge of the same and enter the same upon his own individual books of account as the funds of the said Wilson, and to deposit such of said funds in the said trust depositary, as he, the said secretary, should elect to do, when they, the said officers, well knew that such funds, dues, assessments, and fines and all funds of every kind belonging to the order should be delivered to the supreme treasurer and by him deposited with the trust depositary as provided in section 22 of the laws of the said fraternity which are annexed and made a part hereof. And complainant avers that through such practice so negligently and carelessly permitted and allowed a large amount of the funds of the said corporation were fraudulently appropriated, converted, and wasted and lost to the said order. And complainant charges the said officers, trustees, and supreme executive board with mismanagement and neglect in performing their duties as such officials and trustees in not discovering and preventing

said Wilson in retaining said funds, dues, and assessments and so charging the same to himself and commingling the same with his individual funds and moneys, all of which would have been revealed to the said officers, the members of said supreme executive board, and the said supreme board of trustees, had they been watchful and vigilant in the performance of their duties in the management and conduct of the business of the said corporation which they, and each of them, agreed to be when assuming the duties of said positions as officers, directors, and trustees, and as a result of said negligence and inattention many thousands of dollars belonging to said corporation and its membership have been lost and dissipated and not accounted for to complainant as receiver.

"*Twelfth.* The said trust depositary, viz., the Commercial Bank, through its officers and employés, for 10 years and upwards immediately and next prior to the 28th day of March, 1908, negligently, carelessly, and without legal right or authority paid to the said W. L. Wilson, supreme secretary of said order, many thousands of dollars on divers warrants regularly drawn and countersigned by the proper officers that should have been used in payment of matured claims against said fraternity, all of said warrants being so paid without the indorsement of the persons to whose order such warrants were drawn, the said payment to the said Wilson being made in the following manner, viz.: By the said depositary then and there transferring an amount equal to the amount of the warrant presented from the investment fund to the so-called secretary's fund. The complainant alleges that the depositary bank negligently and carelessly permitted the said Wilson to draw checks upon the said funds so transferred from the investment fund to the alleged secretary's fund, and in that manner negligently, carelessly, and unlawfully permitted and allowed the trust funds of the said fraternity to be dissipated, squandered, and converted by said Wilson, to uses and purposes other than those for which the same were received and held, and by so doing the trust funds of said order were dissipated and lost to it and the said several persons in whose favor said warrants had been so drawn for the purpose of paying matured claims of said members against the order have not been paid, and complainant will not be able to pay to said creditors the amounts so due and coming to them until the said funds

are restored by the said officers, trustees, boards, and the said depositary to the said investment fund and to complainant as receiver of said fraternity.

"*Thirteenth.* A large part of the business of the said corporation consisted in loaning money secured by mortgage upon real estate to its members, and the mortgages and securities so taken were required to be deposited with the said trust depositary, viz., the Commerical Bank, and were required by said depositary to remain in its possession and control until said mortgages and securities were duly paid. Complainant alleges that was the practice and custom of the said supreme secretary, W. L. Wilson, to enter and carry upon the records and books of account kept by him as such secretary the mortgages and securities belonging to the said corporation. Complainant alleges that the said trust depositary, upon the payment of any of said mortgages or securities, did duly surrender such securities or mortgages, and the same were delivered to the mortgagors or the persons entitled to receive the same; but the said W. L. Wilson, as supreme secretary, continued to carry upon his said books and accounts many of said mortgages and securities as still on hand as valid and subsisting securities and assets of said fraternity and of great value, to wit, the face value thereof. Complainant avers that it was the duty of the supreme board of trustees as a board of auditors, in their monthly and annual audit of the secretary's account in which capacity said trustees acted, to ascertain whether the assets disclosed by said accounts and records were valid and subsisting obligations, by an examination of the assets on deposit with the said trust depositary and the list of assets as disclosed by the records of said secretary, and he alleges that they wholly failed to perform this duty, and negligently and carelessly certified monthly and annually to the said fraternity and its membership that said accounts and records were correct, and that the assets consisting of mortgages and securities as shown by said books and accounts were in the possession of the said depositary bank, when in truth and in fact upwards of $100,000 of said assets in the form of mortgages and securities had been paid and discharged and should have been deducted from the assets of said corporation as published and reported to its membership, and because of said neglect and failure and misrepresenta-

tion there was lost to said corporation and its membership a large amount, to wit, $125,000 and upwards.

"*Fourteenth.* It became and was the duty of the supreme executive board to require a true and correct monthly report of the detailed financial transaction of said corporation for the preceding month from said supreme secretary, and it was the duty of said supreme executive board and the members thereof to examine and determine the correctness of the said reports, by such means and methods as would reveal their correctness or falsity, and complainant alleges that the said reports were false and misleading and fictitious, in that they did continuously for some years prior to March 28, 1908, contain and show that the said corporation was possessed of a large amount in assets, to wit, securities consisting of mortgages and notes which in truth and in fact it did not own or possess, the same having been paid and discharged, all of which should have been discovered and detected and further loss prevented to said fraternity by said supreme executive board, and which said false conditions would have been revealed by an examination and comparison of the assets, viz., said mortgages and securities on deposit with the said depositary and the said books of account and reports, and said negligence and inattention to duties resulted in the loss and dissipation of a large amount of the assets of said fraternity, for which the said officers and trustees should account to the complainant as receiver of said corporation.

"*Fifteenth.* It was also the duty of the supreme executive board and its members to examine the monthly report of the supreme secretary for the purpose of ascertaining if the same agreed with the true condition of the finances of the order for the previous month, and complainant alleges that said board and its members so negligently, carelessly, and indifferently acted in this regard that they failed to ascertain that the actual cash in the said depository to the credit of some of the funds or accounts of the order, and in particular the so-called secretary's fund, was a less sum than that shown by any report, and as a result of this negligent conduct and failure to perform the duties resting on said board and its members the funds of said order in a large amount were dissipated, lost, and squandered by the said W. L. Wilson, and have not come to the possession of complainant for said order and its membership.

"*Sixteenth.* It was the duty of the supreme executive

board and its membership to examine the annual report of the supreme secretary, for the purpose of ascertaining if said report truthfully disclosed the receipts and disbursements of funds for the preceding year and to determine if the same correctly stated the full particulars relating to the loans and funds of the order; and complainant alleges that said supreme executive board and its membership were guilty of such negligence in performing the aforesaid duty for upwards of 10 years immediately prior to March 28, 1908, that the same resulted in false reports being made by said secretary as to assets and cash on hand belonging to said order, thus deceiving the membership and resulting in a loss of its funds in a large amount, all of which should have and would have been prevented by said supreme executive board had they performed the duties assumed by and required of them by the laws of the order and by the exercise of ordinary care and prudence in the management of the business of said fraternity.

"*Seventeenth.* It was the duty of the supreme executive board and each member thereof, including the supreme board of trustees, to examine the monthly and annual reports of the supreme treasurer of said order at the time it was required to examine the monthly and annual reports of the supreme secretary; and complainant alleges that said board and the individual members thereof so negligently and carelessly performed this duty for upwards of 10 years prior to March 28, 1908, that they failed to discover the assets and cash actually on hand were many thousands of dollars less than that shown by the reports of the said secretary, all of which would have been discovered by due diligence and ordinary care on the part of said supreme executive board and its members; and complainant alleges as a result of said negligence and inattention the assets and funds of said fraternity were for a period of years prior to March 28, 1908, dissipated, fraudulently appropriated, lost, and stolen by the said supreme secretary.

"*Eighteenth.* The members of said supreme executive board were vested with all the power to manage and conduct the business of said fraternity during the recess of the grand lodge which met annually, and as such managing board it became and was its duty and the duty of its individual members to use great care in the conduct of the business of said order; but the complainant alleges

that the said board and its members were guilty of such negligence, carelessness, and inattention in managing the affairs of said fraternity, that its ruin and insolvency were made possible, and that such insolvency and ruin would have been prevented had its officers and members of the supreme executive board and the said official depositary been diligent in the performance of their duties. That through their negligence the said Wilson was able to manipulate the accounts and funds of said order and to misapply the same whereby the same became lost to the order.

"*Nineteenth.* The said supreme executive board and the supreme board of trustees and the individual members thereof were jointly and severally guilty of negligence, carelessness, and inattention to their duties and those assumed by them in failing to guard and supervise and protect the funds of said order knowingly permitted by them and each of them to be carried in the so-called secretary's fund. Complainant alleges that said supreme executive board and the supreme board of trustees and the members thereof neglected to account and at no time ascertained from the said depositary the amount of cash in said account or the purposes the same was being used for, and at no time during the years of its existence, which was well known to them, and each of them, was the said account audited or checked up in any way, but, on the contrary, the same was neglected and permitted to be used and checked against by said Wilson and other persons for their individual purposes, and complainant alleges that this negligence and inattention to the duties required and assumed by said persons as trustees and officers resulted in the loss of many thousands of dollars to said order.

"*Twentieth.* Complainant alleges that it was the duty of the supreme treasurers, Albert D. Bennett and Albert A. Graves, during the time they severally occupied the positions of supreme treasurer, to make monthly and annual reports to the supreme executive board that would show in detail the condition of the so-called secretary's fund, and that it became the duty of the said supreme executive board and its members to call and require such monthly and annual statements, and complainant alleges that the said supreme treasurers neglected to make said reports, and said supreme executive board neglected to call and require such reports, and in this regard the treasurers

and the said board and its members were guilty of such inattention and want of due care in the management of the said corporation's business that the said W. L. Wilson was enabled to conceal his manipulations of the funds of the said order and to and did, as a result of said neglect and want of care, appropriate to his own uses many thousands of dollars of the trust funds of said order, which said funds then and there became lost to said order.

"*Twenty-first.* The laws of said corporation prohibited the loaning of any of its funds to the officers thereof, but, notwithstanding said prohibition, the said officers, the supreme executive board and the said trustees and directors, permitted and allowed large sums to be loaned to the wife of said W. L. Wilson when the said trustees and officers should have known that such loans were in truth and in fact for the use and benefit of the said W. L. Wilson, and that said loans resulted in great financial loss to the said corporation.

"*Twenty-second.* Complainant avers that the said corporation order is insolvent and not able to pay its creditors, and that it is necessary, and therefore he prays to this court that the said several persons, officers, and boards and the members thereof and the said trust depositary come to and make an accounting of the trust funds of the said corporation; that as one of the defendants the said depositary the Commercial Bank be required to come to an accounting with this complainant of its receipt and disbursement of all funds, assets, and securities of said corporation deposited with it during the period of time it acted as such depositary, and that it be adjudged responsible for and required to pay to complainant all moneys, lost, dissipated, or stolen by said William L. Wilson, through and as a result of any neglect or inattention of duty required or assumed to be performed by said depositary or its officers; that the said several defendants, to wit, Nathan S. Boynton, G. Christie Meisel, Albert D. Bennett, Albert A. Graves, Mortimer Willson, Daniel P. Markey, Albert Dixon, Edward Campbell, William L. Wilson, and Frank T. Wolcott, jointly and severally as trustees and officers and members of the supreme executive board and the supreme board of trustees, and that they be adjudged responsible for the loss of the assets and funds of said corporation resulting from their negligence as charged in this bill of complaint, and that the amount for which they and each of them jointly and severally

should be held liable, be determined by this court, and that they be required to pay over and deliver to complainant the several sums and amounts found and determined by this court at the hearing to have been intrusted to their care and thereafter lost and dissipated through or on account of their joint or several neglect of or inattention to the duties required or assumed by them as officers, trustees, directors, and managers of the affairs of said corporation."

With the bill of complaint profert is made of the printed laws of the fraternity. To this bill the defendants Boynton, executors of the estate of Nathan Boynton, who was president of the fraternity, and seven other of the defendants, not including the defendant bank, filed their joint and several demurrers, and defendant Mortimer Willson filed his separate demurrer. These demurrers coming on to be heard were overruled, with leave, upon payment of certain costs, to answer the bill of complaint. From the order overruling the demurrers, the demurring defendants have appealed to this court.

It is stated in the bill that it is filed for a discovery and an accounting "and upon information derived from the books, records, and papers of the fraternity," and upon the receiver's belief based thereon. It is the apparent theory of the bill that funds came into the possession and control of the demurring defendants, as trustees, officers, and agents of the society, and that through their joint and their several negligence, acts of official negligence, and failures to perform official duties, the funds were lost, squandered, and stolen. Conspiracy is not charged, nor are specific losses traced to or charged as resulting from specific conduct. It is admitted that different defendants performed and were charged with the duty of performing different duties. It is contended that there was a common duty to safeguard the funds and their investment, to see to it that they were not lost or misappropriated, which common duty would have been performed if the officers had performed their specific, designated duties; that the funds have been lost or misappropriat-

ed as a result of the breach or breaches of the specific, designated duty; and that the court should inquire into the specific conduct of each defendant and, as such conduct appears to have contributed to the result, hold each responsible.

As to the joint demurrer, it specifies that the bill is multifarious, and that the matters therein alleged may be tried and determined at law. The objection that the bill is multifarious is not ground for a general demurrer, and an appeal does not lie from an order overruling a special demurrer.

The second objection, namely, that actions should be begun at law, is disposed of against appellants by *Flynn* v. *National Bank*, 122 Mich. 642 (81 N. W. 572), and *Fred Macey Co.* v. *Macey*, 143 Mich. 138 (106 N. W. 722, 5 L. R. A. [N. S.] 1036). However likely it may seem to be that the proofs will not support the charge that all of the defendants failed in performance of their designated duties or support a decree against all of the appealing defendants, it cannot be said that there is no matter in the bill warranting equitable relief as to one or more of them. As was said in *Flynn* v. *National Bank, supra,* "we find it unnecessary to discuss the degree of negligence which will justify a court in holding" officers of the society liable for losses.

Defendant Mortimer Willson alleges, in addition to reasons already considered, that all of the losses complained about occurred after he had ceased to be a member of the executive board of the supreme lodge, which was on or about April 20, 1906. We have called attention to the general nature of the charges in the bill. It is possible that with the books and records of the society in his possession the receiver ought to have been more specific in the charges, but we cannot say there was no actionable conduct on the part of officers, including this defendant, prior to the date given, and that no losses occurred prior to that time. We shall assume that at the hearing such order

will be followed as will result in no unnecessary expense to any defendant.

The order appealed from is affirmed, with costs to complainant.

STEERE, C. J., and MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.   KUHN and BIRD, JJ., did not sit.